In the United States District Court
for the Northern District of Georgia
Atlanta Division

| | |
|---|---|
| DENNIS QUINETTE, | |
| Plaintiff, | |
| v. | CIVIL ACTION FILE NO. 1:17-CV-1819-TWT |
| DILMUS REED, et al., | |
| Defendants. | |

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Defendants'
Motion to Dismiss [Doc. 24]. For the reasons set forth below, the Defendants'
Motion to Dismiss [Doc. 24] is DENIED.

## I. Background

The Plaintiff Dennis Quinette is a former inmate at the Cobb County
Detention Center (the "Detention Center").[1] This case arises out of an injury
that the Plaintiff allegedly sustained as the result of being shoved by the
Defendant Dilmus Reed, a former Cobb County Sheriff's Office employee who
worked at the Detention Center. The Defendants Chief Lynda Coker, Chief
Deputy Milton Beck, Colonel Donald Bartlett, Colonel Lewis Alder, Colonel
Janice Prince, and Colonel Roland Craig were members of the command staff at

---

[1]      First Am. Compl. ¶ 13.

the Detention Center during the events underlying this lawsuit.[2] The Defendant Sheriff Neil Warren was the Cobb County Sheriff and was tasked with operating the Detention Center.[3] These Defendants are collectively referred to as the "Command Staff Defendants."

On May 28, 2015, the Plaintiff was in custody at the Detention Center. The Plaintiff alleges that he had recently been arrested and was undergoing the booking and intake process at the jail.[4] At the time of this incident, the Plaintiff was housed in an intake holding cell.[5] According to the Plaintiff, Reed opened the door to his cell at 7:04 AM to escort another inmate into the cell.[6] As Reed was placing the other inmate in the cell, the Plaintiff stood in front of the cell door and attempted to get Reed's attention.[7] According to the Plaintiff, he wanted to make a phone call, and had stood at the cell door for a few minutes to try to get Reed's attention to request to do so. The Plaintiff alleges that he respectfully attempted to flag down Reed, but Reed ignored him and started to close the cell door.[8] As the cell door was closing, the Plaintiff placed his hand on

---

[2]     *Id.* ¶¶ 3-8.

[3]     *Id.* ¶ 9.

[4]     *Id.* ¶ 14.

[5]     *Id.* ¶ 15.

[6]     *Id.* ¶ 17.

[7]     *Id.* ¶ 19.

[8]     *Id.* ¶ 21.

the window of the cell door.[9] According to the Plaintiff, he did not touch the door with any force or try to prevent Reed from closing the door, and the door began to latch closed.[10]

Nevertheless, despite the Plaintiff's calm and non-threatening demeanor, Reed allegedly opened the door, took one large step forward, and, without warning, forcefully thrust the Plaintiff with two hands toward the back of the holding cell.[11] The Plaintiff was thrown across the cell, landed on his left hip, and began screaming in pain.[12] Reed, ignoring the Plaintiff's screams, closed the cell door and walked away.[13] Reed did nothing to attend to the Plaintiff's injury.[14] Instead, he returned to the cell multiple times and made several attempts to pull the Plaintiff up off the floor.[15] Another officer then reported the incident to medical officials at the Detention Center, and a nurse arrived to attend to the Plaintiff seven minutes after he was thrown to the floor.[16] The

---

[9]     *Id.* ¶ 23.

[10]    *Id.* ¶¶ 24-26.

[11]    *Id.* ¶ 35.

[12]    *Id.* ¶ 39.

[13]    *Id.* ¶ 40.

[14]    *Id.* ¶ 44.

[15]    *Id.* ¶¶ 45-53.

[16]    *Id.* ¶ 57.

Plaintiff was ultimately transported to an emergency room, where he was diagnosed with a broken hip.[17] This entire incident was captured on video.[18]

Reed was subsequently investigated for this incident.[19] He admitted during an internal affairs investigation that he "stepped into" the push, making it more forceful.[20] According to the Plaintiff, Reed also admitted that he used this amount of force because he was mad at the Plaintiff.[21] Reed claimed that he used this force against the Plaintiff because he feared that the Plaintiff's fingers would get caught in the closing door.[22] The internal affairs investigation ultimately concluded that Reed failed to comply with the policies and procedures of the Cobb County Sheriff's Office by utilizing an unreasonable and unnecessary amount of force against the Plaintiff.[23] Reed was then terminated from Cobb County Sheriff's Office.[24]

---

[17]    *Id.* ¶ 58.

[18]    *Id.* ¶ 18. This video was manually filed with the Court. [Doc. 22]. The gratuitous, unprovoked, and malicious violence of Reed can only be appreciated by watching the tape.

[19]    *Id.* ¶ 59.

[20]    *Id.* ¶ 42.

[21]    *Id.* ¶ 60.

[22]    *Id.* ¶ 61.

[23]    *Id.* ¶ 65.

[24]    *Id.* ¶ 66.

According to the Plaintiff, Reed had a lengthy disciplinary history during his time with the Cobb County Sheriff's Office. He had previously been the subject of twelve internal affairs investigations, and six of those investigations were concluded to be "founded."[25] Three of those investigations were for use of excessive force.[26] The Plaintiff alleges that many of the Command Staff Defendants were involved in these prior disciplinary actions and had knowledge of Reed's history.[27] However, despite this history, Reed was not terminated from his position until the incident in question occurred.[28]

On May 19, 2017, the Plaintiff filed this action. In his First Amended Complaint, the Plaintiff alleges two claims against Reed. First, he asserts a claim under 42 U.S.C. § 1983 for the use of excessive force in violation of the Fourth and Fourteenth Amendments. Second, he asserts a state law claim for assault and battery. The Plaintiff asserts a claim for violation of 42 U.S.C. § 1983 for supervisory liability against the Command Staff Defendants in their individual capacities. The Defendants now move to dismiss.

---

[25]     *Id.* ¶ 68.

[26]     *Id.*

[27]     *Id.* ¶¶ 98, 107, 119.

[28]     *Id.* ¶ 70.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[29] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[30] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[31] Generally, notice pleading is all that is required for a valid complaint.[32] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[33]

---

[29] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); FED. R. CIV. P. 12(b)(6).

[30] *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).

[31] *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[32] *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

[33] *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

# III. Discussion

## A. Section 1983 Claims

The Defendants first argue that they are entitled to qualified immunity. Qualified immunity exempts an officer from section 1983 liability under certain circumstances.[34] To be entitled to qualified immunity in the Eleventh Circuit, an officer must show that he was acting within the scope of his discretionary authority at the time of the alleged wrongful acts.[35] Once the officer has proved that he was within the scope of his discretionary authority, the Plaintiff must show that the officer violated "clearly established statutory or constitutional rights of which a reasonable person would have known."[36] In order to establish that a reasonable officer would have known of a right, a plaintiff must show development of law in a "concrete and factually defined context" such that a reasonable officer would know that his conduct violated federal law.[37] Two questions are central to the qualified immunity defense. First, the Court must

---

[34]     *See* Pearson v. Callahan, 555 U.S. 223, 231 (2009).

[35]     *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The parties agree that Reed was acting within the scope of his discretionary authority. Defs.' Mot. to Dismiss, at 10 n.4; Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 16 n.7.

[36]     *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[37]     *Jackson v. Sauls*, 206 F.3d 1156, 1164-65 (11th Cir. 2000).

determine whether there was a violation of a constitutional right.[38] Second, the

Court must then determine whether the right was clearly established.[39]

## 1. Constitutional Violation

First, the Court must determine whether the Defendants committed a

constitutional violation."Claims involving the mistreatment of arrestees or

pretrial detainees in custody are governed by the Fourteenth Amendment's Due

Process Clause instead of the Eighth Amendment's Cruel and Unusual

Punishment Clause, which applies to such claims by convicted prisoners."[40] "In

deciding whether force deliberately used against a pretrial detainee is

constitutionally excessive in violation of the Fourteenth Amendment, 'the

---

[38]  *Hope v. Pelzer*, 536 U.S. 730, 736-42 (2002).

[39]  *Lee*, 284 F.3d at 1194.

[40]  *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). There is some question as to whether the Fourth Amendment or Fourteenth Amendment governs this analysis. The Fourth Amendment protects arrestees from excessive force during an arrest, while the Fourteenth Amendment protects a pretrial detainee from excessive force. *See Howell v. Houston Cty., Ga.*, No. 5:09-CV-402, 2011 WL 3813291, at *13 (M.D. Ga. Aug. 26, 2011).The Eleventh Circuit has indicated that "the precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins (governed until a conviction by the Fourteenth Amendment) is not settled in this Circuit." *Hicks v. Moore*, 422 F.3d 1246, 1253 n.7 (11th Cir. 2005). Some confusion exists among courts as to what constitutional provision applies at different stages of the criminal justice process. *Howell*, 2011 WL 3813291 at *13. The Eleventh Circuit has not provided a clear standard to govern this question in close cases. *Id.* However, since the Plaintiff had been in custody for some period of time when this incident took place, the Court finds that the Fourteenth Amendment should govern this analysis. *See id.* at *13-*19 (analyzing a broad range of case law and determining that the Fourteenth Amendment governed an excessive force claim by a detainee who was undergoing the intake process at a jail).

pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable.'"[41]

Objective reasonableness turns on the individual facts and circumstances of a particular case.[42] This determination must be made from the perspective of a reasonable officer on the scene, and "[a] showing of the officer's state of mind or subjective awareness that the force was unreasonable is not required in this analysis."[43] The use of force is reasonable only if "a reasonable officer would believe that this level of force is necessary in the situation at hand."[44] Several factors are relevant to this determination, including "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount

---

[41]     *Shuford v. Conway*, 666 F. App'x 811, 815-816 (11th Cir. 2016) (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)). The standard previously used by the Eleventh Circuit to determine whether a defendant used excessive force in violation of the Fourteenth Amendment, which required that the plaintiff prove that the defendant applied the force maliciously or sadistically to cause harm, has been abrogated by the Supreme Court's decision in *Kingsley v. Hendrickson* in 2015. In *Kingsley*, the Supreme Court held that "a pretrial detainee must show only that the force . . . used against him was objectively unreasonable." *Kingsley*, 135 S. Ct. at 2473.

[42]     *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

[43]     *Shuford*, 666 F. App'x at 816.

[44]     *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1186 (11th Cir. 2001)).

of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."[45]

Accepting the Plaintiff's factual allegations as true, the Court concludes that Reed's use of force was objectively unreasonable. According to the Plaintiff's allegations, Reed, without warning, forcefully shoved the Plaintiff to the floor when the Plaintiff was merely touching the cell door window as it closed. Under the factors provided by the Supreme Court and the Eleventh Circuit as guidance on this question, the Court concludes that Reed used excessive force when he shoved the Plaintiff. As to the first factor, the relationship between the need for the use of force and the amount of force used, the amount of force utilized was disproportionate to the need for force. The Plaintiff, a 54 year old man who was not as physically dominant as Reed, was merely touching the window of his cell door. Even if Reed needed to respond with some type of force to have the Plaintiff move away from the door, the violent shove that Reed used was out of proportion with the force needed to resolve the situation.

Second, Reed made no effort to temper or limit the amount of force used. Reed never verbally directed the Plaintiff to back away from the door, and did not begin with a light amount of force. Instead, Reed immediately, and without warning, forcefully shoved the Plaintiff away from the door. Reed also admitted

---

[45] *Shuford*, 666 F. App'x at 816 (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)).

that he stepped into the shove so as to add more force.[46] According to the Plaintiff, Reed made no attempt to peacefully resolve the situation before using force against him. Therefore, this factor weighs in favor of finding a constitutional violation.

As to the third and fourth factors, under the facts alleged, there was no severe security problem involved in this incident, and no reasonable threat existed. Although it may have been necessary for Reed to make the Plaintiff step away from the closing door, this did not present a serious risk of security to Reed or the Detention Center. The Plaintiff was merely touching the door, attempting to get Reed's attention. Thus, a reasonable officer would not perceive the threat presented to be serious. Finally, there is no indication that the Plaintiff was actively resisting. Under the facts alleged, Reed gave the Plaintiff no warning or instructions at all that the Plaintiff could have resisted in the first place, nor did the Plaintiff engage in any physical acts that could be construed as resisting. Instead, Reed immediately shoved the Plaintiff away from the door without warning. Given these factors, the Court determines that Reed's actions were objectively unreasonable and in violation of the Plaintiff's Fourteenth Amendment right to be free from excessive force.

---

[46] First Am. Compl. ¶ 42.

## 2. Clearly Established Law

Next, the Court must determine whether this constitutional right was clearly established. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."[47] "This inquiry is limited to the law at the time of the incident, as 'an official could not be reasonably expected to anticipate subsequent legal developments.'"[48] Although *Kinglsey's* objective reasonableness standard governs the analysis of the existence of a constitutional violation, it does not govern this Court's analysis of whether the unlawfulness of Reed's conduct was clearly established at the time it occurred, since *Kingsley* was decided after this incident occurred.[49] "Instead, in order to determine whether the clearly

---

[47]     *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997).

[48]     *Shuford v. Conway*, 666 F. App'x 811, 817 (11th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[49]     *Jacoby v. Baldwin Cty.,* 666 F. App'x 759, 765 (11th Cir. 2016) ("While *Kingsley's* objective unreasonableness standard governs the existence of a constitutional violation, that decision was issued after the restraint chair incident took place, so it plays no part in our determining whether the unlawfulness of Rowell and Keers' conduct was clearly established at the time it occurred."); *see also Belcher v. City of Foley*, 30 F.3d 1390, 1400 n.9 (11th Cir. 1994) ("[Cases] . . . decided after the conduct in this case occurred . . . could not have clearly established the law at the time of the conduct in this case.").

established requirement is met in this case, we look to pre-*Kingsley* case law, which applied the old 'sadistic or malicious' standard for excessive force."[50]

A constitutional right can be clearly established in three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law."[51] The Plaintiff, admitting that there is no indistinguishable case law on point, argues that this constitutional right was clearly established under the second and third methods.[52] The Plaintiff also argues that this right is clearly established under a *per se* rule for violations of the Eighth and Fourteenth Amendments.[53] The Court agrees that this right was clearly established.

As to the second method, the Plaintiff has not shown that a broad principle within the Constitution, statutes, or case law provides the necessary precedent to clearly establish this right.[54] Instead, the Plaintiff only points to

---

[50]    *Jacoby*, 666 F. App'x at 765.

[51]    *Shuford*, 666 F. App'x at 817 (citing *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291-92 (11th Cir. 2009)).

[52]    Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 17.

[53]    *Id.*

[54]    *See Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1292 (11th Cir. 2009) ("Here, case law does not provide the necessary precedent, either specifically or through broad principles, to clearly establish the right.").

the excessiveness and egregiousness of Reed's conduct, which is relevant to the third inquiry, not this inquiry. Even assuming that Reed's conduct was totally egregious, this argument fails to identify a broad principle that can be discerned from the Constitution, statutes, and case law that would have put the Defendants on notice of the unconstitutionality of Reed's conduct. The Plaintiff does not identify a broad principle at all that would have put the Defendants on notice of this right. Therefore, the Plaintiff fails to establish that this right was clearly established under this second method.

Consequently, the Plaintiff must utilize the third method for proving that a right is clearly established. Thus, only if Reed's conduct was "so egregious and unacceptable so as to have blatantly violated the Constitution would qualified immunity be unavailable" to him.[55] The Plaintiff's allegations satisfy this burden. "[T]o come within this narrow exclusion, 'plaintiff must show that the official's conduct was so far beyond the hazy border between excessive and acceptable force that the official had to know he was violating the Constitution even without case law on point.'"[56] "This standard is met when every reasonable officer would conclude that the excessive force used was plainly unlawful."[57]

---

[55]     *Id.*

[56]     *Id.* (quoting *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997)).

[57]     *Id.*

Accepting the Plaintiff's allegations as true, Reed's egregious conduct meets this standard. Reed's push, which was totally unprovoked, was "so far beyond the hazy border between excessive and acceptable force" that he must have known that it was plainly unconstitutional. According to the Plaintiff, the cell door had already begun to latch closed, and the Plaintiff merely placed his hands on the window of the cell door to get Reed's attention. Reed then reopened the door, and in a fit of anger, violently thrust the Plaintiff toward the floor without warning.[58] Reed then stood over him, falsely claiming that the Plaintiff had "rushed" him. This conduct was egregious enough and far enough beyond the "hazy border" between excessive and acceptable force that Reed must have known that he was violating the Plaintiff's constitutional rights.[59] Reed's conduct was "so violent and harsh to be considered an egregious violation of a constitutional right."[60] The cell door had already latched closed and the Plaintiff presented no security threat. Any reasonable officer, under the facts alleged, would conclude that the force used by Reed was plainly unlawful. Therefore,

---

[58]     Reed's allegations are supported by a surveillance video recording of the incident [Doc. 22].

[59]     *See Lee v. Ferraro*, 284 F.3d 1188, 1199-1200 (11th Cir. 2002) (concluding that officer who was physically abusive toward non-aggressive arrestee blatantly violated the Constitution and was not entitled to qualified immunity); *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997) (denying qualified immunity to officer who broke the arm of an individual complying with the officer's orders).

[60]     *Lewis*, 561 F.3d at 1292.

since Reed's conduct was a blatant violation of the Constitution, qualified immunity is unavailable to him.

Alternatively, this right was also clearly established under a *per se* rule for defeating qualified immunity. Ordinarily, a plaintiff must show both: (1) that a constitutional or statutory right has been violated, and (2) that this right was clearly established.[61] However, the Eleventh Circuit has provided that, "[f]or claims of excessive force in violation of the Eighth or Fourteenth Amendments . . . a plaintiff can overcome a defense of qualified immunity by showing only the first prong, that his Eighth or Fourteenth Amendment rights have been violated."[62] The Eleventh Circuit created this rule because the subjective element required to establish an excessive force violation of the Eighth or Fourteenth Amendment "is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution."[63]

Therefore, the Plaintiff can overcome a qualified immunity defense if he shows that Reed's actions amount to a constitutional violation under the pre-*Kingsley* standard. Under the pre-*Kingsley* standard, a jailor's use of force

---

[61] *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009).

[62] *Id.* at 1216-17.

[63] *Id.* at 1217 (quoting *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008)).

violates the Fourteenth Amendment if it "shocks the conscience."[64] The use of

force "shocks the conscience" if it is applied "maliciously or sadistically for the

very purpose of causing harm," instead of in a good faith effort to maintain

discipline.[65] In determining whether force was applied maliciously and

sadistically to cause harm in violation of the Fourteenth Amendment, the

Eleventh Circuit considers the following factors: "a) the need for the application

of force; b) the relationship between the need and the amount of force that was

used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the

threat to the safety of staff and inmates; and e) any efforts made to temper the

severity of a forceful response."[66] And, in considering these factors, the Court

must "give a wide range of deference to prison officials acting to preserve

discipline and security, including when considering decisions made at the scene

of a disturbance."[67]

For similar reasons that Reed's conduct was so egregious as to have

clearly violated the Constitution, his conduct also "shocks the conscience." The

Plaintiff's factual allegations show that Reed did not use this force in a good-

faith effort to maintain or restore discipline, since the Plaintiff did not represent

---

[64]     *Id.* at 1217 (quoting *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir.
2008)).

[65]     *Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005).

[66]     *Fennell*, 559 F.3d at 1217 (citing *Cockrell v. Sparks*, 510 F.3d 1307,
1311 (11th Cir. 2007)).

[67]     *Cockrell*, 510 F.3d at 1311.

a threat to security.[68] Instead, taking the Plaintiff's allegations as true, Reed acted maliciously and sadistically and with the purpose of causing harm to the Plaintiff. Reed applied force because he was "mad" at the Plaintiff.[69] As the surveillance video shows, the Plaintiff had created no disturbance, and presented no threat to the security of Reed or the Detention Center, since the door had already closed. Under these circumstances, no reasonable officer would have believed that such a use of force was necessary to maintain discipline in the jail. Instead, taking the Plaintiff's allegations as true, Reed, angered at the Plaintiff, applied force against him in an effort to cause harm. Therefore, the Plaintiff has adequately alleged that Reed acted maliciously and sadistically.

And, taking the factors listed above into account further supports the conclusion that Reed's force was applied maliciously and sadistically. As to the first two factors, the need for force was low, and the amount of force applied was disproportionate to that need. The Plaintiff, an older man who was smaller than Reed, merely touched the window of the cell door as it closed. This presented little need for the use of force because the Plaintiff's actions did not represent a risk of danger to staff or other inmates. As to the third factor, the extent of injury inflicted, the Plaintiff suffered a broken hip that required a trip to the

---

[68]     *Fennell*, 559 F.3d at 1217.

[69]     First Am. Compl. ¶ 60.

emergency room.[70] As to the fourth factor, the extent of the threat to the safety of staff and inmates, the Plaintiff presented no serious threat to the staff or other inmates. As the surveillance video shows, the Plaintiff patiently stood by the cell door, and as it closed, placed his hand on the window. This presented no real threat to others that would require Reed to act in such a manner. Finally, as to the fifth factor, Reed made no effort to temper the severity of his forceful response. According to the Plaintiff, Reed was completely unprovoked, and gave the Plaintiff no warning before applying force. Reed also made no effort to peacefully resolve the situation. Instead, he immediately utilized a forceful shove, and then failed to summon medical attention. Therefore, each of these factors points to the conclusion that Reed's conduct shocks the conscience.

In *Cockrell v. Sparks*, the Eleventh Circuit applied these factors in a similar situation and concluded that an officer, who opened a cell door and shoved a drunk inmate to the floor, used reasonable force under the pre-*Kingsley* standard.[71] However, in that case, which the Eleventh Circuit noted was a "close" case, the inmate was drunk, banging on the cell door, and distracting officers from attending to another inmate who had attempted

---

[70]     The Eleventh Circuit has noted that this factor "may be outweighed by the officer's inability to reasonably anticipate the severity of the injury." *Fennell*, 559 F.3d at 1219. Reed may not have been able to reasonably anticipate that his conduct would break the Plaintiff's hip. Regardless, the other "shock the conscience" factors still weigh in favor of finding a constitutional violation under this standard.

[71]     *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007).

suicide.[72] *Cockrell* is distinguishable because the inmate there, who was loudly banging on the cell door, had created a disturbance while the officers needed to deal with the other inmate's suicide attempt. As the court explained, "[t]hat the minimal force was used to quiet Cockrell to care for another inmate in need of medical attention, instead of for some other reason, also weighs against a finding of excessive force."[73] Unlike the officer in *Cockrell*, Reed had no legitimate reason to use force against the Plaintiff, and did not use force in a good-faith effort to maintain discipline. And, unlike the officer in *Cockrell*, who "immediately summoned medical assistance" and thereby "temper[ed] the severity of [the] forceful response," Reed never himself summoned medical attention, and instead stood over the Plaintiff, accusing him of rushing the door. Thus, since this case is distinguishable from the "close" case presented in *Cockrell*, the Court finds that Reed's actions meet the shock the conscience standard and the Plaintiff can defeat qualified immunity under this *per se* rule.

### 3. Supervisory Liability

The Defendants also move to dismiss the Plaintiff's claim against the Command Staff Defendants for supervisory liability.[74] Under section 1983 "[e]very person who, under color of any statute, ordinance, regulation, custom,

---

[72]     *Id.*

[73]     *Id.* at 1312.

[74]     Defs.' Mot. to Dismiss, at 21.

or usage, of any State . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."[75] It "is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."[76] Supervisory liability under section 1983 "occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation."[77]

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.[78]

The "standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."[79] "The deprivations that

---

[75]     42 U.S.C. § 1983 (emphasis added).

[76]     *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks omitted).

[77]     *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

[78]     *Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006) (citing *Cottone*, 326 F.3d at 1360).

[79]     *Cottone*, 326 F.3d at 1360 (internal quotation marks omitted).

constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."[80]

The Plaintiff does not allege that the Command Staff Defendants personally participated in this incident. Instead, the Plaintiff argues that there is a causal connection between the Command Staff Defendants and the Plaintiff's injury due to their failure to "adequately discipline, supervise, and train Defendant Reed in the proper use of force with inmates, in controlling his temper around inmates, and in following the policies of [the Detention Center] and the Cobb County Sheriff's Office as well as Georgia law."[81] The Court concludes that the Plaintiff has sufficiently alleged the existence of this causal connection between the Command Staff Defendants and the Plaintiff's injury to state a claim for supervisory liability under section 1983.

According to the Plaintiff's factual allegations, Reed had an extensive disciplinary history during his employment with the Cobb County Sheriff's Office, and the Command Staff Defendants played active roles in this disciplinary history as his supervisors. Reed was the subject of twelve internal affairs

---

[80]    *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

[81]    First Am. Compl. ¶ 165.

investigations.[82] Six of those investigations were determined to be "founded."[83] Three of those investigations involved the use of excessive force.[84]

First, the Plaintiff alleges that Reed was the subject of an internal affairs investigation in 2005. There, according to the Plaintiff, an inmate with a colostomy bag accused Reed of using excessive force by twisting the inmate's waist cuffs so that his colostomy bag ruptured.[85] There was no video recording or eyewitness of this alleged incident.[86] This allegation was determined to be unfounded, and no disciplinary action was taken against Reed.[87] Then, in 2006, the Plaintiff alleges that Reed was the subject of another internal investigation involving the use of excessive force. There, Reed was booking an inmate into the Detention Center when the inmate made a comment that angered Reed.[88] The inmate at that time was restrained in waist chain cuffs.[89] Reed, angered by the

---

[82] *Id.* ¶ 68.

[83] *Id.*

[84] *Id.* ¶ 69. One of those allegations of excessive force was determined to be "unfounded." *Id.*

[85] *Id.* ¶¶ 72-73.

[86] *Id.* ¶ 74.

[87] *Id.* ¶¶ 81-82.

[88] *Id.* ¶ 84.

[89] *Id.* ¶ 85.

comment, slammed the restrained inmate's face onto the floor.[90] The inmate was sent to the hospital and received stitches.[91] This incident was recorded on video.[92] Reed was found to have violated department policies by using excessive force, and was given a written reprimand.[93]

Next, the Plaintiff alleges that in 2009 the Command Staff Defendants conducted another internal investigation into the use of excessive force by Reed.[94] This investigation resulted from an incident where Reed attempted to "slam" a restrained inmate to the ground with a headlock, while that inmate was chained to a group of other inmates.[95] Reed was angry at the inmate for cursing at him.[96] Reed, by slamming the inmate to the ground, pulled the entire group of inmates back and forth.[97] It was ultimately determined that Reed used excessive force.[98] During this investigation, the Command Staff Defendants reviewed Reed's entire personnel file, and became aware of his history of losing

---

[90]  *Id.* ¶ 87.

[91]  *Id.* ¶ 88.

[92]  *Id.* ¶ 89.

[93]  *Id.* ¶ 90.

[94]  *Id.* ¶ 132.

[95]  *Id.* ¶ 145.

[96]  *Id.* ¶¶ 93, 145.

[97]  *Id.* ¶ 94.

[98]  *Id.* ¶¶ 96, 145.

his temper and using violence against inmates.[99] This included reviewing both the 2005 and 2006 reports of excessive force by Reed.[100] The Plaintiff alleges that Colonel Alder was personally involved in this investigation, and that Chief Coker, Chief Deputy Beck, and Colonel Bartlett were aware of the investigation.[101] During this investigation, these Command Staff Defendants were also made aware of several other instances where Reed violated department policy.[102] Nonetheless, according to the Plaintiff, the Command Staff Defendants did not terminate Reed or assign him different duties.[103] Instead, they issued a reprimand and required Reed to undergo informal counseling.[104]

The Plaintiff further alleges that Reed was the subject of yet another internal affairs investigation in 2014. There, Reed was alleged to have engaged in conduct unbecoming of an officer.[105] This conduct included a "pattern" of use of "racial epithets, profanity, and threats towards inmates," along with Reed's

---

[99]     *Id.* ¶¶ 134-35.

[100]     *Id.* ¶ 135.

[101]     *Id.* ¶ 135.

[102]     *Id.* ¶ 136.

[103]     *Id.* ¶¶ 137-38.

[104]     *Id.* ¶ 139.

[105]     *Id.* ¶¶ 142-146.

"continued propensity to los[e] his temper with inmates."[106] During this investigation, Colonel Prince, Sheriff Warren, Chief Deputy Beck, Colonel Bartlett, and Colonel Craig reviewed Reed's entire personnel file, including the previous incidents involving Reed using excessive force and losing his temper.[107] After this investigation, the Command Staff Defendants merely issued a verbal reprimand to Reed.[108] They did not terminate Reed or assign him different duties.[109] Instead, they allowed him to continue working as a jailor in the Detention Center.[110]

And, in May 2015, Reed was once again the subject of an internal affairs investigation. This investigation involved allegations of favoritism toward inmates and violations of department policy.[111] Specifically, Reed allowed segregation inmates to remain outside of segregation longer than Detention Center policy allowed, and also allowed a favored inmate out of his cell in violation of Detention Center policy.[112] These actions resulted in a fight between

---

[106]     *Id.* ¶ 155. This conduct included a wide range of profane language and inappropriate conduct directed at both inmates and a nurse at the Detention Center. *See id.* ¶ 102.

[107]     *Id.* ¶¶ 143-45.

[108]     *Id.* ¶ 149.

[109]     *Id.* ¶ 147.

[110]     *Id.* ¶ 148.

[111]     *Id.* ¶ 152.

[112]     *Id.* ¶ 117.

segregation inmates.[113] Colonel Craig, Colonel Prince, Chief Deputy Beck, and Sheriff Warren participated in the investigation, and Sheriff Warren conducted the hearing.[114] Once again, these Command Staff Defendants reviewed Reed's entire personnel file, including the previous internal affairs investigations.[115] On May 18, 2015, ten days before the incident underlying this action occurred, the Command Staff Defendants suspended Reed for 16 hours for violating these policies.[116] The Plaintiff alleges that a number of other internal affairs investigations into Reed's conduct were conducted over the course of his employment.[117]

These allegations are sufficient to state a claim for supervisory liability under section 1983. Taken together, these allegations show that Reed exhibited a history of widespread abuse that should have put the Command Staff Defendants on notice of the need to correct the alleged deprivations.[118] The Plaintiff alleges that each of the Command Staff Defendants participated in internal affairs investigations into Reed's conduct, where they should have

---

[113]     *Id.* ¶ 118.

[114]     *Id.* ¶ 119.

[115]     *Id.* ¶¶ 153-54.

[116]     *Id.* ¶ 116. Reed's suspension was scheduled for June 1-2, 2015. However, he never served his scheduled suspension because the incident involving the Plaintiff occurred first, resulting in Reed's termination. *Id.* ¶ 120.

[117]     *Id.* ¶¶ 110-20.

[118]     *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).

become aware of Reed's extensive disciplinary history of violence toward inmates. According to the Plaintiff, the supervisors involved in each of those investigations familiarized themselves with Reed's personnel file, including his disciplinary history. Accepting these allegations as true, the Command Staff Defendants knew of the danger that Reed presented, but took no action to appropriately supervise or discipline him. Instead, the Command Staff Defendants provided Reed with verbal and written reprimands, and never assigned him different duties. According to the Plaintiff's allegation, the Plaintiff's injury was not an isolated incident, but instead part of a pattern of abuse by Reed, of which the Command Staff Defendants were aware.[119] The Plaintiff alleges that all of the Command Staff Defendants were involved in these internal affairs investigations in varying capacities, and each of them failed to take action to adequately discipline, supervise, or train Reed.[120] This

---

[119] *See Valdes v. Crosby*, 450 F.3d 1231, 1244 (11th Cir. 2006) ("[I]nmate abuse at the hands of guards was not an isolated occurrence, but rather occurred with sufficient regularity as to demonstrate a history of widespread abuse at FSP.").

[120] First Am. Compl. ¶¶ 162-65. There may be some question as to whether each of the individual Command Staff Defendants actually possessed the authority to train, discipline, terminate, or otherwise supervise Reed. If an individual Defendant did not possess that authority over Reed, the causal connection between that Defendant's failure to act and the Plaintiff's injury would be broken. However, the Plaintiff has alleged that each Command Staff Defendant failed to adequately discipline, supervise, and train Reed. At this stage of the proceedings, where the Court accepts the Plaintiff's factual allegations as true, the Court finds that it is appropriate to deny the motion to dismiss. This question will be more appropriate to address at the summary judgment phase.

failure to act by the Command Staff Defendants constitutes the necessary causal connection between the Command Staff Defendants and the Plaintiff's injury to state a claim for supervisory liability.[121]

Furthermore, the Command Staff Defendants are not entitled to qualified immunity on this issue. The Eleventh Circuit has provided that it is clearly established "that a supervisor could be held responsible under 42 U.S.C. § 1983 for constitutional violations committed by subordinates if the supervisor personally participated in the constitutional violation or if there was a causal connection between the supervisor's actions and the alleged constitutional

---

[121] *See id.* at 1239-44 (concluding that supervising officer's knowledge of widespread instances of abuse and excessive force at a prison was enough to create the causal connection needed for supervisory liability); *see also McCreary v. Parker*, 456 F. App'x 790, 793 (11th Cir. 2012) (concluding that supervisor's "alleged knowledge of the increasing frequency of inmate-on-inmate violence, Judge Edelstein's report, and allegations that inmates had repeatedly complained to Parker about being quartered with dangerous inmates and Parker's failure to correct same notwithstanding his ability to do so" was sufficient to impose supervisory liability); *Danley v. Allen*, 540 F.3d 1298, 1315 (11th Cir. 2008) ("This Court has long recognized that supervisors are liable for the excessive force and the deliberate indifference of their employees where the supervisors received numerous reports of prior misconduct of that nature by those same employees and did nothing to remedy the situation."); *cf. Cottone v. Jenne*, 326 F.3d 1352, 1361-62 (11th Cir. 2003) (concluding that the plaintiffs did not establish the necessary causal connection when the complaint failed to allege that the supervisors had any knowledge of the subordinate officers' "failure to monitor inmates" or that the subordinate officers "had any past history, or even one prior incident, of failing to monitor inmates" and that the "supervisors were not on any notice of [the subordinate officers'] unconstitutional conduct so as to put the supervisors on notice of the need to correct or to stop the[ir] conduct . . . by further training or supervision").

deprivation."[122] Accepting the Plaintiff's allegations as true, Reed's extensive history of using excessive force and violence toward inmates was sufficient to put the Command Staff Defendants on notice of his misconduct and was sufficiently blatant to require them to act.[123] Therefore, since the Plaintiff has alleged that the Command Staff Defendants violated his clearly established constitutional rights, they are not entitled to qualified immunity.[124]

### B. State Law Claim

Next, the Defendants move to dismiss the Plaintiff's state law claim. In Count II, the Plaintiff asserts claims for assault and battery under O.C.G.A. §§ 51-1-13 and 51-1-14 against Reed.[125] The Defendants move to dismiss these claims, arguing that the claims are barred by sovereign immunity and official immunity.[126]

---

[122] *Williams v. Santana*, 340 F. App'x 614, 617 (11th Cir. 2009).

[123] *See id.* at 618 ("Taking Williams's allegations as true, as we must do at this stage of the proceedings, the numerous prior incidents involving Barazal's use of force were sufficient to put Parker on notice of misconduct that was sufficiently 'obvious, flagrant, rampant and of continued duration' to require him to act.").

[124] *Id.* at 618 ("Williams alleges that Parker failed to respond to these prior incidents of misconduct by providing Barazal with increased training or supervision; thus, Williams has alleged the necessary causal connection to hold Parker liable in his supervisory capacity. Because Barazal has alleged that Parker violated his clearly established constitutional rights, the district court did not err in denying qualified immunity at the motion to dismiss stage of the proceedings.").

[125] First Am. Compl. ¶¶ 126-28.

[126] Defs.' Mot. to Dismiss, at 23-27.

First, the Defendants argue that state law claims brought against Reed in his official capacity are barred by sovereign immunity.[127] Under Georgia law, "the constitutional doctrine of sovereign immunity forbids [Georgia] courts to entertain a lawsuit against the State without its consent."[128] This sovereign immunity extends to suits against the state, its departments and agencies, and its officers acting in their official capacities.[129] "The sovereign immunity provided in the Georgia Constitution to the state or any of its departments or agencies also applies to Georgia's counties."[130] "Sovereign immunity is not an affirmative defense that the governmental defendants must establish."[131] Rather, the Plaintiff has the burden of establishing that sovereign immunity does not bar his claim.[132] The Plaintiff argues that the state has waived its sovereign immunity in this context through the Georgia bond statutes, and that "he should be permitted to proceed against the bond of the sheriff and his deputies."[133]

---

[127] *Id.* at 24.

[128] *Lathrop v. Deal*, 301 Ga. 408 (2017).

[129] *Id.*

[130] *Presnell v. Paulding Cty, Ga.*, 454 F. App'x 763, 769 (11th Cir. 2011) (citing *Gilbert v. Richardson*, 264 Ga. 744, 747 (1994)).

[131] *Scott v. City of Valdosta*, 280 Ga. App. 481, 484 (2006).

[132] *See id.* ("[Sovereign Immunity] is a privilege, subject to waiver by the State, and which the party seeking to benefit from the waiver must show.").

[133] Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 27-28.

O.C.G.A. § 15-16-5 states that sheriffs must provide a $25,000 bond "conditioned for the faithful accounting for all public and other funds or property coming into the sheriffs' or their deputies' custody, control, care, or possession."[134] Similarly, O.C.G.A. § 15-16-23 states that each deputy must provide a $5,000 bond "conditioned upon the faithful accounting for all public and other funds or property coming into the deputy's custody, control, care, or possession."[135] These statutes waive sovereign immunity for the official actions of a sheriff when sued on the sheriff's bond.[136] In such a situation, the plaintiff's recovery is limited to the amount of the applicable bond.[137] And, "a bond given under the authority of a statute 'can provide no more protection than that which is required by [the] statute.'"[138] Thus, actions against a sheriff's bond under these statutes are limited to those dealing with the sheriff's faithful accounting of public funds and other funds or property in his or her possession. The state has not waived sovereign immunity as to other types of actions brought against sheriffs and their deputies in their official capacities. For this reason, the Plaintiff's state law claim for assault and battery against Reed in his official

---

[134]    O.C.G.A. § 15-16-5.

[135]    O.C.G.A. § 15-16-23.

[136]    *Pelka v. Ware Cty., Ga.*, CV 516-108, 2017 WL 4398652, at *5 (S.D. Ga. Sept. 29, 2017) (citing *Cantrell v. Thurman*, 231 Ga. App. 510, 514 (1998)).

[137]    *Id.* (citing *Meeks v. Douglas*, 112 Ga. App. 742, 745 (1965)).

[138]    *Lord v. Lowe*, 318 Ga. App. 222, 226 (2012).

capacity is barred by sovereign immunity because it does not involve the faithful accounting of public funds or property.

The Defendants next argue that the Plaintiff's state law claim against Reed in his individual capacity is barred by official immunity.[139] Under Georgia law, "[i]ndividual government employees are shielded by official immunity from damages suits unless the plaintiff can establish that the official negligently performed a ministerial act or performed a discretionary act with malice or an intent to injure."[140] "Official immunity . . . is applicable to government officials and employees sued in their individual capacities."[141]

The parties agree that Reed was performing a discretionary act. Therefore, the Plaintiff will need to show actual malice to overcome official immunity.[142] "In the context of official immunity, 'actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact.'"[143] "Actual malice requires more than harboring bad feelings about another."[144] "While ill will may be an element of actual malice in many factual situations, its

---

[139]     Defs.' Mot. to Dismiss, at 25-27.

[140]     *Glass v. Gates*, 311 Ga. App. 563, 574 (2011).

[141]     *Stone v. Taylor*, 233 Ga. App. 886, 888 (1998).

[142]     *Merrow v. Hawkins*, 266 Ga. 390, 391 (1996).

[143]     *Peterson v. Baker*, 504 F.3d 1331, 1339 (11th Cir. 2007) (quoting *Adams v. Hazelwood*, 271 Ga. 414 (1999)).

[144]     *Adams v. Hazelwood*, 271 Ga. 414, 415 (1999).

presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal."[145] "[M]alice in this context means badness, a true desire to do something wrong."[146] And, "'actual intent to cause injury' means 'an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.'"[147] The Supreme Court of Georgia has noted that an officer who uses force intentionally and without justification acts with the actual intent to cause injury.[148]

The Plaintiff's allegations meet this burden. As discussed above, Reed applied force against the Plaintiff maliciously and sadistically, and not in a good faith effort to maintain security at the Detention Center. Reed, who was mad at the Plaintiff, shoved him intentionally and without justification. This push was unprovoked and unjustified. Thus, under Georgia law, he acted with ill will and the intent to cause an injury.[149] The Plaintiff has adequately alleged that Reed

---

[145]     *Id.*

[146]     *Peterson*, 504 F.3d at 1339.

[147]     *Id.* (quoting *Kidd v. Coates*, 271 Ga. 33 (1999)).

[148]     *Kidd v. Coates*, 271 Ga. 33 (1999) (quoting *Gardner v. Rogers*, 224 Ga. App. 165, 169 (1996)).

[149]     *Id.*

acted with actual malice, and Reed is not entitled to official immunity as to the Plaintiff's state law claim.[150]

## IV. Conclusion

For the reasons stated above, the Defendants' Motion to Dismiss [Doc. 24] is DENIED.

SO ORDERED, this 18 day of January, 2018.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[150]    *See, e.g., Tabb v. Veazey*, No. 1:05-cv-1642, 2007 WL 951763, at *12 (N.D. Ga. Mar. 28, 2007) (concluding that an officer acted with actual malice when he hit the plaintiff with the butt of a handgun several times before placing him in handcuffs).